UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TURNER INDUSTRIES GROUP, LLC | § § § | |
| Plaintiff, | § § § | CIVIL ACTION NO. 4:13-CV-00456 |
| VS. | § § | |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 450 | § § § § | |
| Defendant. | § § | |

## PLAINTIFF'S MOTION FOR SPEEDY HEARING AND EXPEDITED DISCOVERY

Plaintiff, Turner Industries Group, LLC (*"Plaintiff"* or *"TIG"*), through its undersigned counsel, hereby moves this court for an Order granting a speedy hearing and expedited discovery.

### I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 57, TIG requests that the Court order a "speedy hearing" to declare the parties' respective rights and duties arising out of a July 1, 2012 Project Labor Agreement ("Agreement").  As is clear from TIG's Amended Complaint, and from the facts identified herein, if the speedy hearing required by Rule 57 is delayed, neither party will be positioned to make informed decisions about their respective rights and duties arising out of the Agreement.  More specifically, the Agreement about which TIG seeks a declaratory ruling expires on June 30, 2013. *See* p. 11 of Exhibit "1" hereto. Accordingly, Plaintiff cannot obtain a timely declaration of its existing rights under the Agreement unless a "speedy hearing" is set in accordance with Rule 57.  As such, TIG requests a Hearing on its Amended Complaint no later than June 24, 2013.  Further, in order to obtain the necessary proof and admissible testimony for

the Court's resolution of TIG's declaratory relief at this requested hearing, TIG likewise seeks expedited discovery allowing for a small number of key depositions to begin after May 6, 2013 as permitted by Rule 26(d)(1).

## II. FACTUAL BACKGROUND

TIG and Local 450 executed a July 1, 2012 Agreement covering employment and working conditions for certain represented employees working on projects in South Texas, such as Shell Deer Park, Oneok, Alcoa-Port Comfort, International Paper, Air Products and TIG's own Houston, Texas facility. *See* Exhibit "1" hereto.[1] Pursuant to the parties' Agreement, approximately 26 crane operators have been employed on these projects since July 1, 2012. As required by their Agreement, TIG informed Local 450, through communications with its sister union, Local 406, of each TIG job in Local 450's area, and TIG remitted working dues and apprenticeship fund contributions for TIG employees who were traveling members of Local 406. *See* Amended Complaint, Doc. 11. All such remittances were accepted until around February 21, 2013, when Local 450 returned them to TIG without explanation. *See* Exhibit "2" hereto.

Since the Agreement's execution, TIG requested that Local 450 refer employees for employment, but Local 450 either failed or was unable to refer qualified operators in a timely manner. Consequently, TIG has relied on traveling members of Local 406 for such work. *See* Amended Complaint, Doc. 11. In a January 28, 2013 letter, Local 450 informed TIG that it was terminating their Agreement because the parties had allegedly failed to take the actions necessary for its "consummation." *See* Exhibit "3" hereto. On February 6, 2013, TIG responded and informed Local 450 that the Agreement was consummated through payment to Local 450 of Local 406 members' working dues and apprenticeship fund contributions, and that Local 450 had

---

[1] The identified projects are not cited in the text of Exhibit "1," but it is undisputed that those were some of the projects TIG worked on in South Texas.

2

accepted such funds. *See* Exhibit "4" hereto. On or about February 11, 2013, Local 450 began refusing to "clear" traveling members of Local 406 for work in the south Texas area serviced by Local 450, and in doing so, breached the Agreement. *See* Amended Complaint, Doc. 11. On February 18, 2013, Local 406 Vice President Carlos Benoit, informed Local 406 members, "that, if [Local 406 members] were working in Texas and fined by Local 450 (as expected), that [it] would be $5,000 for the occurrence, and that [such amounts] would be deducted from [their] retirement at the time of retirement." *See* Bryan Fontenot's Statement, Exhibit "5" hereto.[2]

On March 19, 2013, Local 450 Business Agent Fred Swift made similar threats to David Hartfield. *See* Exhibit "6" hereto. Because of Local 450's clearance refusals, threatened fines and retirement benefit reductions, some ten TIG operators thereafter refused to provide such services. *See* Amended Complaint, Doc. 11. Not surprisingly, TIG has experienced substantial work disruption along with significant financial loss, both of which will continue hereafter without the Court's intervention. *Id.*

### III. ARGUMENT AND AUTHORITIES

#### A. TIG's Right to a Speedy Hearing Under Rule 57

As explained in Plaintiff's Amended Complaint and herein, TIG contends that declaratory relief is necessary and will continue to be so long as Local 450 ignores its contractual duties. An expedited or "speedy hearing" is therefore needed to minimize the danger of avoidable loss as well as the unnecessary accrual of damages and to provide an early adjudication of Local 450's alleged defenses to liability. As already mentioned, the Agreement on which TIG seeks declaratory relief expires on June 30, 2013. *See* p. 11 of Exhibit "1."

---

[2] Mr. Fontenot was but one of the Local 406 Members who received this threat. *Id.*

Without a "speedy hearing," Plaintiff will be without a timely remedy for obtaining the declaratory relief sought in its Amended Complaint and contemplated by Rule 57.

Whenever a plaintiff seeks declaratory relief under Rule 57, the Court is empowered by the explicit text of the Rule to "order a speedy hearing" and to "advance [that action] on the calendar." *Donnely v. Mavar Shrimp & Oyster Co.*, 190 F.2d 409 (5th Cir. 1951). The courts have reasoned that "expedited consideration" of actions for declaratory relief are provided by Rule 57 because such early attention can "save the court and the parties tremendous expense" by setting the plaintiff's complaint for a "speedy hearing." *Klungvedt v. Unum Group*, 2012 WL 2368623 at *3 (D. Ariz.); *Tri-State Generation & Transmission Assoc. Inc. v. BNSF RR Co.*, 2008 WL 2465407 at *7 (D. Ariz.)(granting speedy hearing of plaintiff's declaratory judgment action arising out of contractual dispute because such early hearing may be dispositive of plaintiff's claims); *T&D Meat Packing, Inc. v. SEIU, Local 1*, 2005 WL 623227 at *1 (N.D. Ill.)(granting employer's request for speedy hearing on declaratory judgment action against union in which employer claimed that no enforceable collective bargaining agreement existed).

Here, as in the cases cited above, the Court's decision on the validity and enforceability of the July 1, 2012 Agreement should be dispositive of TIG's contract breach claim. Likewise, if the Court somehow determined that Local 450 lawfully repudiated the Agreement on January 28, 2013, then that ruling is highly relevant to TIG's tortious interference claim asserting that Local 450 had no legal justification for its otherwise unlawful threats to those operators that TIG attempted to hire after January 28, 2013. *See* ¶ 25 of Amended Complaint, Doc. 11. For these reasons, TIG requests that the Court exercise its discretion under Rule 57 to set TIG's declaratory judgment action for a "speedy hearing" no later than June 24, 2013. *Klungvedt, supra* at *3 (ordering that parties conduct limited discovery over sixty days and immediately file

dispositive motions on declaratory judgment action after such period); *T&J Meat Packing, supra* at *1 (setting speedy hearing date twenty-two days after employer moved for such hearing under Rule 57).

### B. TIG's Right to Expedited Discovery Under Rule 26(d)(1)

The Court has broad authority under the Federal Rules of Civil Procedure to manage the discovery process. *See* Fed. R. Civ. P. 26(d) and 16(b)(3)(B).[3] Rule 26(d)(1) explicitly permits a party to seek discovery before the Rule 26(f) Conference when authorized by the court. Fed. R. Civ. P. 26(d)(1). District courts throughout the Fifth Circuit have recognized their discretion to order such early discovery when "good cause" exists for doing so. *Combat Zone Corp. v. John/Jane Does 1-2,* 2012 WL 6684711 at *1 (E.D. Tex.); *Indigital Solutions LLC v. Mohammed,* 2012 WL 5825824 at *3-4 (S.D. Tex.).

Good cause for expedited discovery exists when "the administration of justice outweighs the prejudice to the responding party." *St. Louis Group, Inc. v. Metals & Additives Corp.,* 275 F.R.D. 236, 239 (S.D. Tex. 2011)(internal citations omitted). This good cause analysis is "akin to a broader and more flexible totality of the circumstances analysis" which "is more in keeping with discretion bestowed upon the court in the Federal Rules." *Id.* at 240. Although the Fifth Circuit has not yet addressed this standard, the Southern District of Texas has found that the party seeking expedited discovery does not have to meet the stringent proof requirements necessary for obtaining a preliminary injunction. *Id.* at 240. As explained hereafter, good cause exists for TIG's limited request for expedited discovery.

---

[3] The Comment to the 1993 Amendments to Rule 26(d)(1) states that the Court "can assure that discovery is not unduly delayed either by entering a special order or by setting the case for a scheduling conference." This Comment is particularly relevant to declaratory judgment actions where a "speedy hearing" is requested.

20110119.20130166/1541786.1

- **Good Cause Exists to Depose the Local 406 Operators**

In the construction industry generally, and especially for crane operators, people must travel for work. Often, instead of "traveling," people move. Local 450 clearly recognizes this as indicated by its March 2010 Agreement with Local 406 to clear employees from Louisiana to work in Texas. *See* Exhibit "7."

Because the Local 406 operators who worked for TIG in South Texas will scatter over time, it is imperative that they be subpoenaed and deposed quickly so that their testimony will be obtained before the "speedy hearing" sought herein. Plaintiff's only hope of securing admissible testimony from those operators outside the Court's trial subpoena power under Rule 45(c)(3)(A)(ii) will be to depose them and offer their testimony into evidence pursuant to Fed. R. Evid. 804(a)(5).[4] TIG therefore requests an order permitting it to subpoena and depose those Local 406 operators whom TIG unsuccessfully attempted to employ in South Texas as well as those TIG employees who quit working for TIG in response to Local 450's threats.[5]

Other courts have granted expedited discovery under analogous circumstances where admissible evidence necessary for an early hearing will be difficult to obtain absent an order allowing expedited discovery. *See e.g., Living Scriptures v. Doe(s)*, No. 10-cv-0182-DB, 2010 WL 4687679, at *1 (D. Utah Nov. 10, 2010) (granting motion for expedited discovery where the information sought by plaintiff was "transitory in nature"); *Interscope Records v. Does 1-14*, No. 07-4107-RD, 2007 WL 2900210, at *1 (D. Kan. Oct. 1, 2007) (granting expedited discovery because of the potential that the identity and incidents of infringement could lost if not quickly pursued); *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*, 204 F.R.D. 675, 676 (D.

---

[4] TIG believes that most of the Local 406 operators in this category reside outside the Court's trial subpoena power so their testimony will have to be offered this way.

[5] TIG estimates that there are five to eight deponents who fall into this category.

6

Colo. 2002) (granting expedited discovery because the passage of time would make necessary discovery unusually difficult to obtain).

While there is not yet evidence that documents or data will be permanently lost through the passage of time, there is little likelihood that TIG can provide the Court with the admissible and relevant testimony necessary for the "speedy hearing" sought in TIG's Amended Complaint unless the Court grants the expedited discovery necessary to obtain such testimony. The testimony of those operators whom Local 450 denied clearance and who quit working for TIG will be critical to the Court's findings of fact on TIG's declaratory judgment action.[6] TIG will obviously work with Local 450's counsel to arrange the most convenient locations and dates for these operators' depositions, and by doing so, TIG will lessen any potential prejudice to Local 450 from having to attend these early depositions. Accordingly, good cause exists for permitting these depositions to be taken in advance of the "speedy hearing" sought herein.

- **Good Cause Exists to Depose Two Local 450 Officers**

TIG also requests expedited discovery to depose two Local 450 Officers, Business Agent/Treasurer Fred Swift, and the Local 450 Business Manager, Mark Maher, Sr. While these two deponents are not expected to leave the Court's jurisdiction or be unavailable for the "speedy hearing," their testimony concerning the facts allegedly supporting Local 450's defenses to the enforceability of the July 2012 Agreement is critical to ensuring the existence of a full and accurate record prior to the "speedy hearing" on TIG's Amended Complaint for declaratory relief under Rule 57. TIG will work with Local 450's counsel to ensure that a convenient date and location is obtained for their depositions. Accordingly, good cause also exists for permitting early discovery from these two witnesses.

---

[6] TIG has not requested a jury trial on its declaratory judgment action so the Court will be the finder of fact at the "speedy hearing" with respect to this claim.

7

**WHEREFORE, PREMISES CONSIDERED**, Turner Industries Group, LLC respectfully requests that its Motion for Speedy Hearing and Expedited Discovery be granted and that the Court set the hearing on TIG's declaratory judgment action for no later than June 24, 2013 and permit the depositions described herein to be taken beginning on May 6, 2013.

Respectfully submitted, this the 22nd day of April, 2013.

By: */S/ Evan A. Moeller*
Evan A. Moeller
State Bar No. 24051067
SDTX Bar No. 664837
HIRSCH & WESTHEIMER, P.C.
Bank of America Center
700 Louisiana, Suite 2550
Houston, TX 77002-2772
Telephone: 713.220.9163
Facsimile: 713.223.9319
E-mail: emoeller@hirschwest.com

**ATTORNEYS FOR PLAINTIFF TURNER INDUSTRIES GROUP, LLC**

**OF COUNSEL:**

R. Pepper Crutcher, Jr.
Texas Bar No. 24063138
Armin J. Moeller, Jr.
Mississippi Bar No. 3399
BALCH & BINGHAM LLP
188 E. Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: 601.961.9900
Facsimile: 601.961.4466
pcrutcher@balch.com
amoeller@balch.com

## CERTIFICATE OF SERVICE

I caused a copy of the foregoing to be served on all counsel of record via the Court's ECF system on the 22nd day of April, 2013.

By: /S/ Evan A. Moeller
Evan A. Moeller

20110119.20130166/1541786.1