# MASTER CRANE RENTAL
## EVERGREEN PROJECT LABOR AGREEMENT
## BETWEEN TURNER INDUSTRIES GROUP, LLC EQUIPMENT DIVISION
## AND THE
## INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 450
## FOR _____

This Agreement is made and entered into by and between the Turner Industries Group, LLC, whose signature is affixed hereto, hereinafter referred to as the "Employer," and the International Union of Operating Engineers Local 450, hereinafter referred to as the "Union."

It is the intent and purpose of the Employer and the Union to promote and improve Labor-Management relations, to encourage the employment of 450 members by Turner, and to set forth in writing herein the basic terms of wages, hours, fringe benefits, and other terms and conditions of employment for all bargaining unit employees.

This agreement is binding on the Employer and the Union only on those projects identified to the Union by the Employee by email to Local 450 Business Manager.  By execution of this agreement, Turner Industries Group agrees to make such notification on each and every occasion Local 406 members are employed by Turner on projects within the jurisdiction of Local 450, regardless of the duration of such employment.  Turner further agrees to remit to Local 450 working dues and apprenticeship contributions for all hours worked by Local 406 members on these projects.

Local 450 will in turn work with Turner to promote the utilization of IUOE members within the crane rental industry, and to facilitate the employment of Local 406 members on the projects.

## ARTICLE I
## RECOGNITION

**Section 1:**      The Employer herby recognizes the Union as the exclusive bargaining representative of all current and future bargaining unit employees employed by the Employer under Section 9(a) of the Labor Management Relations Act (LMRA) over which the Union has craft, occupational, and territorial jurisdiction.

**Section 2:**      The bargaining unit under this agreement shall consist of all employees of the Employer, to be employed in the future for the purposes of the operation of cranes of any type within the geographical jurisdiction of the International Union Of Operating Engineers Local 450, referred by Local 450 to Turner, and employed on the "projects" as defined in the agreement.

## Article II
## GEOGRAPHIC AND TERRITORIAL JURISDICTION

**Section 1:**      The terms of this Agreement shall cover all Crane Rental and related work within the geographic and territorial jurisdiction of the Union and shall include the following counties:  Angelina, Aransas, Atascosa, Austin, Bandera, Bastrop, Bee, Bell, Bexar, Blanco, Brazoria, Brazos, Brooks, Burleson, Burnet, Caldwell, Calhoun, Cameron, Chambers, Colorado, Comal, Coryell, DeWitt, Dimmit, Duval, Edwards, Falls, Fayette, Fort Bend, Frio, Galveston, Gillespie, Goliad, Gonzales, Grimes, Guadalupe, Hardin, Harris, Hays, Hidalgo, Jackson, Jasper, Jefferson, Jim Hogg, Jim Wells, Karnes, Kendall, Kenedy, Kerr, Kimble, Kinney, Kleberg, Lampasas, LaSalle, Lavaca, Lee, Leon, Liberty, Live Oak, Llano, Madison, Mason, Matagorda, Maverick, McLennan, McMullen, Medina, Menard, Milam, Mills, Montgomery, Newton, Nueces, Orange, Polk, Real, Refugio, Robertson, Sabine, San Augustine, San Jacinto, San Patricio, San Saba,



EXHIBIT

tabbies

1

Schleicher, Starr, Sutton, Travis, Trinity, Tyler, Uvalde, Victoria, Walker, Weller, Washington, Webb, Wharton, Willacy, Williamson, Wilson, Zapata, Zavala.

**Section 2:**       The above-referenced geographic and territorial jurisdiction may be adjusted, modified or reassigned by assignment of the International Union of Operating Engineers.

**This Section left Blank.**

## ARTICLE III
## CRAFT JURISDICTION

**Section 1:**     The Employer agrees to recognize and respect the traditional craft jurisdiction of the Union as established by Agreements and Decisions of Record, Established Trade Practice, or the Building and Construction Trades Department, AFL-CIO, and the National Joint Board for the Settlement of Jurisdictional Disputes.

## ARTICLE IV
## NON DISCRIMINATION

**Section 1:**     The Parties agree that equal opportunity for employment shall be afforded to all persons regardless of age, race, sex, creed, color or national origin in compliance with all applicable Civil Rights Legislation and Executive Orders.  Whenever reference is made to gender in this Agreement, the same shall be interpreted and construed as including both male and female.

## ARTICLE V
## MANAGEMENT RIGHTS

**Section 1:**     The Employer retains and shall exercise full and exclusive authority and responsibility for the management of his operations, except as expressly limited by the terms of this Agreement. There shall be no limit on production work or the restriction of the full use of proper tools or equipment, except as provided herein.

## ARTICLE VI
## PRE-JOB CONFERENCES

**Section 1:**     When the Employer obtains a project outside of normal day-to-day crane rental performance, such as a plant shut-down or outage, that will require substantial numbers of referrals for longer term operations at a specific project, the Employer agrees to notify the Union of such projects and shall arrange a date, time, and place to hold a pre-job conference prior to the commencement of any work. The Union and the Employer shall discuss and agree upon such matters as starting time, number of hours of work per week, number of shifts, the anticipated number of employees required for the job, key employees, and any specific conditions that may require attention to enhance the safety and productivity of the job.

## ARTICLE VII
## HIRING AND JOB REFERRALS

**Section 1:**     The Employer agrees that all hiring of applicants shall be subject to and in accordance with the Union's established Referral Procedure and any amendments thereto. Should the Union fail

to refer an applicant after two (2) working days, excluding Saturdays, Sundays, and Holidays, the Employer may hire an applicant from any source, provided that the applicant shall first acquire a referral from the Union prior to beginning work.

**Section 2:**     Selection of applicants shall be on a nondiscriminatory basis. The Employer retains the right to accept or reject any applicant referred by the Union for sufficient and justifiable reasons and to be the sole judge of an applicant's qualifications.

## ARTICLE VIII
## DUES AUTHORIZATIONS AND PAYROLL DEDUCTIONS

**Section 1:**     The Employer agrees to recognize all legal Dues Deduction Authorizations (Dues Check-off) requested by the Union and executed by any of its employees and to deduct from the wages of said employees those sums authorized and to remit same to the Union as designated.

**Section 2:**     Dues deductions shall be remitted to the Union on a monthly basis and no later than the fifteenth (15th) day of the month for the preceding month's work hours.

**Section 3:**     Dues authorizations and assignments are made pursuant to Section 302 of the National Labor Relations Act, as amended, and are in full force and effect to the extent permitted by that Act. The Local Union shall indemnify, defend and hold harmless the Company against any claims or liabilities arising out of the administration of this Article.

## ARTICLE IX
## STEWARDS AND UNION REPRESENTATIVES

**Section 1:**     The Union, at its discretion, may appoint working employees as Shop Stewards. Stewards shall be qualified operating engineers and shall be appointed by the Union's Business Manager or Business Agent and confirmed in writing to the Employer. The Employer shall allow Job Stewards time to perform their duties during working hours with no loss of pay. Job Stewards shall not have authorization, either expressed or implied, to initiate work stoppages or any other types of disruptive activity in violation of this Agreement.

**Section 2:**     Authorized representatives of the Union shall have reasonable access to the Employer's projects for purposes relative to the terms and conditions of this Agreement. Such representatives shall recognize and comply with the Employer's safety policies, jobsite policies, and established procedures for access to the projects.

## ARTICLE X
## GRIEVANCE AND ARBITRATION PROCEDURE

**Section 1:**     Any dispute arising under the application or interpretation of the terms and conditions of this Agreement shall be resolved in accordance with the procedures set forth herein. No employee shall be discharged without just cause. No grievance shall be recognized unless called to the attention

3

of the Employer by the Union, or to the Union by the Employer within five (5) days, excluding Saturdays, Sundays, and Holidays, after the alleged violation occurred or became known to the aggrieved party. Any employee, alleging a violation of this Agreement, shall file a grievance within five (5) working days, excluding Saturdays, Sundays, and Holidays, of the occurrence of the event which gave rise to the grievance or from the time the event became known to the affected employee or employees; otherwise the grievance shall be considered waived.

**Section 2:** The time limits specified in this Article may be extended by mutual agreement between the parties.

Step 1: The dispute shall be referred to the Representative of the Union or his designated representative and the Project Superintendent and/or the Employer's Representative at the construction project within five (5) working days, excluding Saturdays, Sundays, and Holidays. A conference will be held during that time between the Union's Representative and the Employer's Superintendent or Representative to attempt to reach a resolution.

Step 2: In the event the dispute is not resolved in Step 1 above, the grievance shall be reduced to writing and referred to the Union's Business Manager or Business Representative and the Employer's Project Manager or Human Resource Manager within seven (7) working days after the date of the Step 1 conference, excluding Saturdays, Sundays, and Holidays, to attempt to reach a resolution.

Step 3: In the event the dispute is not resolved in Step 2 above, then either party may refer the matter for final and binding Arbitration within seven (7) working days, excluding Saturdays, Sundays, and Holidays, after the date of the Step 2 conference. An impartial Arbitrator shall be selected from a panel of Arbitrators submitted by and in accordance with the rules and regulations of the Federal Mediation and Conciliation Service. Thereafter, the parties shall defer to the decision of the Arbitrator. It is agreed that the Arbitrator shall have no authority to change, amend, add to, or detract from the provisions of this Agreement, but shall only rule on the applicability of the Agreement to the specific grievance submitted to him. The expense of the impartial Arbitrator shall be borne equally by the Union and the Employer. The decision of the Arbitrator shall be final and binding on all parties.

## ARTICLE XI
## NO STRIKE NO LOCKOUT

**Section 1:** The Union agrees that it will not cause, authorize or initiate any strike, slowdown, or cessation of work performed by the Employer during the term of this Agreement. The Employer agrees that he will not lockout any employees performing work for the Employer during the term of this Agreement.

**Section 2:** Upon being notified that employees of the Union are violating this Article, the principal officer or officers of the Union shall use the best efforts of their offices to cause the employees the Union represents to cease any violations of this Article. Compliance with this obligation shall free the Union from any liability for acts of employees. Moreover, the Union shall not be liable for acts of employees for which it has no responsibility.

4

**Section 3:**      Should the Employer fail to provide properly funded payroll checks for work performed by employees or fail to make proper contributions to the Union's benefits funds,  the provisions of ARTICLE XI shall not apply and the Union may legally withhold its members' services. However, it is understood that such action, consistent with ARTICLE XI, does not allow the Union to establish any picket lines or disrupt the work of other employers and craft workers.

**Section 4:**      The provisions of ARTICLE XI shall not be in effect during negotiations for wage and benefits openers during the term of this Agreement, provided that all legally required Employer and FMCS notifications have been made.

## ARTICLE XII
## SUBCONTRACTING

**Section 1:**      In the event the Employer subcontracts any work covered by this Agreement, such subcontractor shall become signatory to this Agreement.  In the event such subcontractors are not available, the Union and Employer will meet to discuss exceptions to this Article that would further the intent and purpose of this Agreement.

## ARTICLE XIII
## WAGE RATES AND BENEFIT CONTRIBUTIONS RATES

**Section 1:**      The classifications of employment, minimum wage rates and fringe benefit contributions required by this Agreement shall be in accordance with APPENDICES A and B, which are incorporated into and made a part of this Agreement. Employees shall receive no less than the wages and benefits rates listed in APPENDICES A and B.

## ARTICLE XIV
## EMPLOYEE BENEFIT FUNDS

**Section 1:**      The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Central Pension Fund of the International Union of Operating Engineers and Participating Employers; the Agreement and Declaration of Trust establishing the Southern Operators Health Fund; and the Agreement and Declaration of Trust establishing the Hoisting & Portable Engineers Local 450 Apprentice Fund, and any successors to the above-referenced Trust Funds.

**Section 2:**      The Employer agrees to become signatory to the Participating Agreements for the above-referenced benefit funds and make the appropriate contributions to the funds as specified in ARTICLE  XIV, Section 1  based on all hours worked or paid to all bargaining unit employees covered by this Agreement.

**Section 3:**      The Employer irrevocably designates as representatives among the trustees of said Funds such trustees as are named in said Agreements and Declarations of Trust as employer trustees, together with their successors selected in the manner provided by said Agreement and Declaration of Trust, as that document may be amended from time to time.

**Section 4:**      Maintenance of Benefits: The Union may divert or assign any amount of funds from

5

the total package of wages and benefits as may be required to maintain the benefit programs provided herein. The Union agrees to give the Employer at least thirty (30) days notice of any modifications to benefits contribution rates required under this provision.

**Section 5:** The Employer further agrees to comply with the Standards of Apprenticeship developed and administered for the training of operating engineers and the decisions of the Joint Apprenticeship Committee concerning the interpretation of those standards and each apprentices' specific training needs.

### ARTICLE XV
### WORKERS' COMPENSATION

**Section 1:** The Employer agrees to carry Workers' Compensation Insurance for his employees or to qualify for a self-insured plan under the applicable state regulations and to exert all reasonable means to obtain prompt payment of injury compensation claims for employees. The Employer will furnish Proof of Insurance or of his self-insured status upon request by the Union.

### ARTICLE XVI
### HOURS OF WORK AND OVERTIME

**Section 1:** Reporting Pay: When an employee or newhire reports for work on any shift between the established hours of his regular shift and he is not given the opportunity to work and was not given previous notification, he shall be paid two (2) hours pay.

**Section 2:** When an employee starts work, he shall be paid not less than four (4) hours pay; and, if he works beyond four (4) hours, he shall be paid for actual hours worked.

**Section 3:** When there is overtime to be worked or if an employee is called out for work, the Employer will make every effort to notify the employee who has been operating the specific piece of equipment for the overtime or call out.

**Section 4:** When an employee is required by the Employer to report to the Employer's crane yard to pick up a crane or piece of equipment, his time shall start when he begins his preparations on his crane or equipment. Under no circumstances shall employees be required to prepare their crane, equipment, or rigging on their own time.

**Section 5:** Eight (8) hours per day shall constitute a day's work and forty (40) hours per week, Monday through Friday, shall constitute a week's work. 8:00 a.m. to 4:30 p.m. shall be a normal eight (8) hour work day. However, due to the nature of crane rental work, a flexible starting time between the hours of 6:00 a.m. and 10:00 a.m. shall be permitted. All work before 6:00 a.m. and after eight (8) hours per day shall be paid at the overtime rate. If an employee's starting time starts after 10:00 a.m., all hours worked after 6:30 p.m. shall be paid at the overtime rate.

**Section 6:** All time worked before and after the established work day of eight (8) hours, Monday through Friday, shall be paid at the rate of one and one-half (1 ½ x) the straight time rate of pay.

6

**Section 7:**    A Shift Differential of one dollar and fifty cents ($1.50) per hour shall be added to the employee's base rate of pay for all work performed on a second or third shift, when such shifts are established by the Employer.  Shift work shall not be established to circumvent overtime work. All overtime rates for employees working a second or third shift shall be calculated using the employee's base rate of pay plus one dollar and fifty cents ($1.50) per hour before applying the overtime rate.

**Section 8:**    Employees shall be provided with a meal after two (2) hours of unscheduled overtime and every four (4) hours thereafter. If a meal is not provided, seven dollars and seventy-five cents ($7.50) for each meal shall be paid to the employee in lieu of a meal.

**Section 9:**    If an employee finishes work on the jobsite after work hours and the Employer is unable to get a paycheck to the employee, the employee can pick up the paycheck the next day at the Employer's crane yard at no cost to the Employer. If the job is completed prior to the 4:30 p.m. cutoff time and the employee returns to the Employer's crane yard, the Employer must pay the employee. If the paycheck is not provided to the employee at that time and the employee must return the next day to pick up his paycheck, the Employer must pay the employee two (2) hours pay for show-up time.

**Section 10:**    On projects where the Employer shall be performing work at a specific site for multiple weeks, such as a plant shut-down or outage, the Employer shall have the option of establishing a four (4) day per week, ten (10) hours per day work week. When such a schedule is implemented, the standard work day shall be ten (10) hours per day on four (4) consecutive work days Monday through Thursday. Start time and quitting time shall be between the hours of 6:30 a.m. and 6:30 p.m., exclusive of a thirty (30) minute unpaid lunch period. In the event that the project or a portion thereof experiences downtime due to inclement weather, the Employer shall have the option to schedule a make-up workday of such work up to ten (10) hours on Friday and/or Saturday. The make-up workday must follow the lost workday and must be performed during the same calendar week during which the downtime occurred. When make-up work is required, the employee or employees who operated the equipment at the time of the down-time shall be given the opportunity to perform the make-up work on his equipment. Saturday make-up time shall not be mandatory and shall be at the option of the employee.

**Section 11:**    On projects where the Employer establishes a 4—10 schedule, the ten (10) hours per day Monday through Thursday shall be paid at the employees' straight time rate of pay. Work performed before or after the regular ten (10) hour shift or during lunch time shall be paid at one and one-half (1 ½ x) the straight time rate of pay.

**Section 12:**    If a night shift is established in conjunction with a 4—10 schedule, the shift differentials of ARTICLE XVI, Section 7 shall apply to all employees on the night shift.

**ARTICLE XVII**
**HOLIDAYS, SATURDAY, AND SUNDAY PAY**

**Section 1:**    Holidays recognized by this Agreement are New Year's Day, Memorial Day, Independence Day (Fourth of July), Labor Day, Thanksgiving Day, Friday after Thanksgiving Day, and Christmas Day.  When any of the above Holidays fall on a Sunday, the following Monday shall be

7

observed as the Holiday.

**Section 2:**     All hours worked on Holidays shall be at the rate of two-times (2x) the regular rate of pay regardless of the total number of weekly hours worked.

**Section 3:**     All hours worked on Saturdays shall be paid at the rate of one and one-half (1 1/2 x) the regular rate of pay regardless of the total number of weekly hours, except in the case of Saturdays worked as a make up day under a four-day, ten-hours (4—10) schedule as described in ARTICLE XVI, Section 10.

**Section 4:**     All hours worked on Sundays shall be paid at the rate of two times (2 x) the regular rate of pay, regardless of the total number of weekly hours worked.

**ARTICLE XVIII**
**TRANSPORTATION**

**Section 1:**     When an employee on a one-man crane cannot drive the crane back to the Employer's crane yard, the Employer will provide transportation back to the crane yard and to the jobsite the next day. This time will be considered travel time and will not accumulate towards the employee's time or pay unless the Employer was given ample notice of the projected quitting time.

**Section 2:**     A bargaining unit employee shall be employed to transport truck cranes from the crane yard to the jobsite when practical.

**Section 3:**     It will be the responsibility of the employee to abide by all Department of Transportation (DOT) rules and regulations.

**ARTICLE XIX**
**SUBSISTANCE PAY**

**Section 1:**     The Employer agrees that all bargaining unit employees covered by this Agreement shall not incur any expenses when working on overnight or out of town assignments requiring travel or overnight stays. The Employer shall have the option of determining the method of providing such subsistence pay for meals, travel expenses, overnight lodging, and related expenses. However, under no circumstances shall any employee incur any out of pocket expenses that would cause him to suffer losses of normal hourly or salaried compensation.

**Section 2:**     The Employer agrees that any subsistence pay shall be applied equally to all of its bargaining unit employees.

**ARTICLE XX**
**SAFETY AND SAFETY TRAINING**

**Section 1:**     No employee shall be required to work with unsafe equipment or under unsafe conditions.  All employees shall have the right to discontinue work that they might reasonably deem

to be unsafe or which might lead to serious accident, injury, or destruction of equipment and property. In the event that such an event arises, the Employer shall make all efforts to investigate and correct or modify the unsafe condition or conditions and allow for the resumption of work in a safe manner.

**Section 2:** The employees covered by this Agreement shall at all times, while in the employ of the Employer, be bound by the safety rules and regulations established by the Employer, owners or clients of the Employer's projects, and applicable safety laws.

**Section 3:** The Employer shall furnish all Personal Protective Equipment (PPE) as required by Federal, State, Local, or site specific regulations. Specialty safety gear such as inclement weather wear, when required, shall be provided by the Employer.

**Section 4:** All company required safety meetings and training and all safety training not in one's local district will be on company time and at company expense excluding travel time, if required. Eight (8) hours of local safety/site training will be on the employee's time. All additional training beyond the eight (8) hours will be done on company time. All personnel dispatched by the Union to the Employer will have a valid Local Safety Council Basic Plus Card (or acceptable equivalent) and a valid TWIC card (as needed). The Employer has no responsibility to contribute to the costs associated with obtaining these cards.

**Section 5:** The parties recognize that safety is a major concern for the Employer, the Union, and the bargaining unit employees. The Employer agrees to utilize its safety department and personnel, and a safety committee composed of bargaining unit employees to discuss and review employee concerns about equipment and procedures that may not meet applicable safety standards or safe operating parameters.

## ARTICLE XXI
## DRUG-FREE WORK FORCE

**Section 1:** Employees will cooperate with the Employer to implement programs to provide a Drug-Free Workforce and eliminate and prevent the existence and use of drugs and controlled substances from the workplace. The Employer agrees to pay for all pre-employment drug testing and analysis. The employees agree to report to designated laboratories or clinics for testing on their own time and at no expense to the Employer.

**Section 2:** If the Employer implements a program of post-employment random drug testing and analysis in the interest of extending the intent of ARTICLE XXI, the employees agree to report to designated laboratories or clinics for testing. However, such post-employment random drug testing and analysis shall be on the Employer's time and at the Employer's expense. Employees cooperating with this provision shall remain employed until such time as a positive test result is verified and certified to the employee by the Employer.

## ARTICLE XXII
## GENERAL PROVISIONS

9

**Section 1:**    The Employer agrees that if an employee is assigned to perform work in any classification listed in this Agreement, that employee shall be an Operating Engineer covered by the terms and conditions of this Agreement.

**Section 2:**    The equipment operated by an employee shall determine that employee's classification. When an employee operates more than one type or class of equipment in one day, he shall be paid the highest rate applicable to the various pieces of equipment he operates for that day.

**Section 3:**    There shall be no limit to the number of machines an employee may operate in one day. However, the number of equipment changes shall not exceed practical and reasonable limitations. Each employee shall be given the first opportunity to perform overtime work on his regularly assigned machine or equipment.

**Section 4:**    Employees shall make all repairs on their machines when there is no mechanic on the job, provided that they are qualified to make such repairs. In the performance of such work, employees may use their own hand tools, but under no circumstance shall employees be required to purchase special tools not ordinarily used.

**Section 5:**    The Employer agrees to utilize apprentices and oilers whenever possible to assist the Union in recruiting qualified individuals into the construction industry and provide entry level employment and formal and on-the-job training opportunities for the development of skilled Operating Engineers.

### ARTICLE XXIII
### ENTIRE AGREEMENT OF THE PARTIES

**Section 1:**    This Agreement shall constitute the whole of the Agreement between the parties governing their entire relationship with respect to those items properly subject to collective bargaining. No agent or representative of either party has authority to make, and none of the parties shall be bound or liable for any statement, representation, promise, inducement, or agreement not set forth herein. The terms of this Agreement shall not be modified or changed in any way other than by the mutual written consent of the Union and the Employer.

### ARTICLE XXIV
### SAVINGS CLAUSE

**Section 1:**    It is not the intent of either party hereto to violate any law, ruling or regulation of any government authority or state agency having jurisdiction of the subject matter of this Agreement and the parties hereto agree that in the event any provision of this Agreement is held to be unlawful or void by any tribunal having the right to so hold, the remainder of the Agreement shall remain in full force and effect.

Project Labor Agreement
IUOE Local 450
Turner Industries Group, LLC Equipment Division

### ARTICLE XXV
### DURATION OF AGREEMENT AND SIGNATURES

This Agreement is for project _____, and shall become effective on _1-7-72_ and shall remain in full force and effect until midnight on date of project completion.

This Agreement may be opened for wage and benefit modifications only, by either party notifying the other, at least sixty (60) days prior to any annual anniversary date by registered or certified mail.

IN WITNESS WHEREOF, the parties hereto execute this Agreement by their respective duly authorized representatives this _1st_ day of _July 2017_.

Notwithstanding the above, this is a participation agreement only and applies exclusively to employees referred by Local 450.

Notwithstanding the above, it is agreed apprenticeship contributions and working dues only will be paid to Local 450 for all hours worked by Local 406 members on this project and/or any project within the jurisdiction of Local 450.

International Union of Operating Engineers
Local 450

_____
SIGNATURE

_____
Business Manager
TITLE

Employer

_____
SIGNATURE

Senior Vice President / General Manager
TITLE

Turner Industries Group, LLC
NAME OF COMPANY

## APPENDIX A
## CRANE RENTAL CLASSIFICATIONS AND WAGE SCHEDULE

**Section 1:**    **Classifications and Wage Rates**

**Group I: Heavy Equipment Operators**
**Rough Terrain Cranes and Cherry Pickers to 89-Tons; Hydraulic Truck Cranes to 50-Tons; Conventional Crawler Cranes to 199-Tons; Truck Crane Front End Man to 199-Tons; Self Propelled Modular Transporters (SPMT); Hoists used For Gin Poles, Lifting Towers and Hoisting & Rigging Operations; Hydraulic Lifting Devices.**

| November 1, 2008 | November 1, 2009 | November 1, 2010 |
|---|---|---|
| $25.80 | $27.55 | $29.80 |

**Group II: Light Equipment Operators—Front End Man**

| November 1, 2008 | November 1, 2009 | November 1, 2010 |
|---|---|---|
| $22.50 | $24.25 | $26.05 |

**Group III: Riggers (Operators Assigned as Rigger)**

| November 1, 2008 | November 1, 2009 | November 1, 2010 |
|---|---|---|
| $25.42 | $27.17 | $29.42 |

**Class I: Rigger  (Three years verifiable experience)**          $26.25

**Class II: Rigger**          $22.25

**Per Hour Add-ons to Base Rates for Specific Crane Configurations and/or Capacities**

|  |  |  |
|---|---|---|
| | Cherry Picker over 90 Ton | $2.25 |
| | Hyd Truck Crane 51-80 Ton | $1.25 |
| | Hyd Truck Crane 81-110 Ton | $3.50 |
| (With front-end man) ———— | Hyd Truck Crane 111-300 T | $2.25 |
| (With front-end man) ———— | Hyd Truck Crane 301 Ton and Over | $3.25 |
| | Conv Crawler 200 Ton and Over | $2.25 |
| | Tower Crane | $3.00 |
| | Front End w CCO 200 Ton and Over | $2.25 |

**Section 3:**    **Whenever the Employer acquires any new equipment or variations and combinations of existing equipment that are not listed in Appendix A, representatives of the Union and the**

Employer shall meet to assign such equipment to the appropriate Classification or to add an Addendum to this Agreement to address the additional classifications or work assignments.

**Section 4:** When job conditions require a second man to build boom and jib, handle mats, flag or signal cranes, frequent moving and setting up cranes, an apprentice or light equipment operator may be used.

**Section 5:** A 110-Ton Hydraulic Crane will have one (1) Heavy Equipment Operator and one (1) Light Equipment Operator, if the extra counterweights (Kidney Weights) are utilized.

**Section 6:** PARK JOBS: The Employer shall use the "Park Job" clause only when necessary. For clarification and to avoid future confusion, it is understood and agreed that the Park Job clause means the Employer has the sole right to determine all manning requirements for all cranes on Park Jobs, especially when the bids by competitors for work is tight. It will be used at the Employer's descretion and only when necessary.

**Park Job Example:** Working within the same facility on the same project while employed by the same Employer or the subcontractor of the original Employer.

Should be on the same job site, not working on a unit on the east side of a plant for XYZ contractor and one (1) crane assigned to ABC contractor on the west side of the plant.

Truck Cranes 110-Ton and above: First Day: One (1) Heavy Equipment Operator and one (1) Light Equipment Operator per crane.

Second Day through next to last day: One (1) Heavy Equipment Operator on each crane and one (1) Light Equipment Operator for up to three (3) cranes. When a qualified operator is used to share the duties of the cranes he is assigned to, he will be paid Journeyman wages.

Last Day: One (1) Heavy Equipment Operator and one (1) Light Equipment Operator per crane.

## FOREMEN AND GENERAL FOREMEN

**Section 1:** When there are eight (8) or more Operating Engineers on a project, one (1) shall be designated as a Foreman and may be required to work at the trade as an operator of equipment (Working Foreman). The wage rate for a Foreman shall be one dollar ($1.00) per hour above the highest paid engineer on the project.

**Section 2:** The Employer shall have the option of designating a General Foreman. A General Foreman shall not work at the trade, but shall perform the normal supervisory duties of a General Foreman.

## REGISTERED APPRENTICES

**Section 1:** Apprentices shall be utilized, when available, with a ratio of one (1) apprentice to four (4) Journeyman Operating Engineers. By mutual agreement between the Union and the Employer, an apprentice may be employed with a lesser number of journeymen. Apprentices may be assigned to any work within the existing classifications, provided that they are performing within the acceptable parameters of the Hoisting and Portable Engineers Local 450 Apprentice Fund's Apprenticeship Standards and are qualified and capable to perform the assigned work as determined by the Apprenticeship Coordinator and the Employer.

**Section 2:** Registered Apprentices shall be paid according to the following Apprenticeship Pay Schedule based on their length of study as an apprentice and the Heavy Equipment Classification wage rates.

| Period | On The Job Learning | Pay Rate |
|---|---|---|
| First period | 1 – 1000 hrs. | 65% |
| Second Period | 1001 -2000 hrs. | 70% |
| Third Period | 2001 – 3000 hrs. | 75% |
| Fourth Period | 3001 – 4000 hrs. | 80% |
| Fifth Period | 4001 – 5000 hrs. | 85% |
| Sixth Period | 5001 – 6000 hrs. | 90% |

## APPENDIX B
## EMPLOYEE BENEFIT CONTRIBUTIONS

**Section 1:** The Employer shall pay the following specified benefits contribution rates for each hour worked or paid to each bargaining unit employee covered by this Agreement.

| | |
|---|---|
| Southern Operators Health Fund | $4.75 |
| Central Pension Fund of the International Union of Operating Engineers and Participating Employers | |
| Heavy Equipment Operators | $4.25 |
| Riggers | $2.75 |
| Hoisting and Portable Engineers Local 450 Apprentice Fund | $0.75 |

**Section 2:** As provided in ARTICLE XIV, Section 4—MAINTENANCE OF BENEFITS, the Union may divert or assign any amount of funds from the total package of wages and benefits as may be

14

required to maintain the benefit programs provided herein. The Union agrees to give the Employer at least thirty (30) days notice of any modifications to benefits contribution rates required under this provision.