IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TURNER INDUSTRIES GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-13-0456 |
| | § | |
| INTERNATIONAL UNION OF OPERATING | § | |
| ENGINEERS, LOCAL 450, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

The above referenced cause, grounded in Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a),[1] seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, that Plaintiff Turner Industries Group, LLC ("TIG") has an enforceable labor contract[2] with Defendant International Union of Operating Engineers (IUOE"), Local

---

[1] Section 185(a) recites,

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in an district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

[2] A copy of the contract (Master Crane Rental Evergreen Project Labor Agreement, dated July 1, 2012) is attached to TIG's Complaint, Ex. A #1 (but actually filed separately in #3), to TIG's Amended Complaint, Ex. A to #11, and to TIG's motion for speedy hearing and expedited discovery, #13, Ex. 1.

450 ("Local 450") and that Local 450 is in breach of it. Alternatively, should the Court find that no enforceable contract exists, in an Amended Complaint TIG asserts, as an additional claim, tortious interference with Plaintiff's prospective business relations under Texas common law, independently based on diversity jurisdiction under 28 U.S.C. § 1332(a). Pending before the Court are, *inter alia,* TIG's motion for speedy hearing and expedited discovery (instrument # 13) and TIG's motion for oral hearing on #13 (#18).

Logically it would appear that addressing the two pending motions to dismiss first would be appropriate. Nevertheless the second, superseding motion (#19) is not ripe. Furthermore the Court has reviewed the briefing filed up to this point and the applicable law and thus far finds that there are substantial questions of material fact that most likely cannot be resolved on a Rule 12(b) review. Nevertheless, because of the urgency raised here, the Court addresses the motion for speedy hearing and expedited discovery and the motion for hearing at this time.

First, to supply a context for the motion for speedy hearing and expedited discovery and its opposition, the Court summarizes the allegations of the Amended Complaint.

TIG asserts that Local 450, a labor organization within the meaning of the LMRA, and TIG are parties to the purported contract in dispute, which covers wages, hours, and working conditions for

certain represented employees working on jobs for TIG, which performs industrial construction and maintenance work at sites in and near Houston, Texas.  Up until TIG initiated this suit on February 20, 2012, pursuant to this contract, TIG informed Local 450 through Local 406 about each TIG job that arose in Local 450's area, and TIG paid working dues and apprenticeship fund contributions, which were accepted, for TIG employees who are traveling members of Local 450's Louisiana sister union, IUOE Local 406.  (In its motion for speedy hearing, TIG states that pursuant to the contract, approximately 26 crane operators have been employed since July 1, 2012 in south Texas on such projects as Shell Deer Park, Oneok, Alcoa-Port Comfort, International Paper, Air Products, and TIG's own Houston facility.)  Furthermore TIG states that the remittances it paid for the traveling members of IUOE Local 406 were accepted until around February 21, 2012, when Local 450 returned them to TIG without explanation.  See letter dated February 23, 2012, Ex. 2 to #13.  Since the parties entered into the contract, TIG has requested that Local 450 refer employees for its jobs, but Local 450 either refused or was unable to refer enough qualified operators in a timely manner to meet TIG's needs, so TIG relied on traveling members of IUOE Local 406 to provide them.

Before January 28, 2013, Local 450 filed a Grievance under the contract in which Local 450 specifically stated that the contract

was enforceable.  Then in a letter dated January 28, 2013 (Ex. 2) Local 450's attorneys claimed that the contract had not been "consummated," and that even if it had been, TIG had breached it by failing to inform Local 450 of jobs in the Houston area and/or by failing to staff those jobs with Local 450 members.[3]  The letter further declared that the contract terminated as of that date, January 28, 2013.

Around February 11, 2013 Local 450 began refusing to clear traveling members of IUOE Local 406 to work for TIG in the Houston area serviced by Local 450, even though the contract required such clearance.  Local 450 also, through its agents and representatives, began to threaten and coerce Local 406 members and non-Local 406 members with charges, trials, and fines to be assessed against them if they continued to work for TIG.  TIG immediately asked IUOE General President James Callhan to intervene in and resolve the dispute, but he did not respond to the request.

On or before February 18, 2013, agents of Local 450 threatened TIG employees, all member of IUOE Local 406, some of whom were working in Louisiana, that if they continued to work for TIG in the Houston area without Local 450 clearance, the IUOE would impose disciplinary fines of thousands of dollars on each of them and

---

[3]  In its motion for speedy hearing, TIG states that it responded that the contract had been consummated by TIG's payment to Local 450 of the Local 406 members' working dues and apprenticeship fund contributions, which Local 450 had initially accepted.  #13, Ex. 4.

that those fines, unless paid sooner, would be deducted from retirement benefits due to them from the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (the "Fund").[4]   The Fund is an ERISA-regulated, multi-employer retirement plan, and thus Agents of the International Union of Operating Engineers are ERISA plan fiduciaries.   TIG maintains that if the threats were carried out, these responsible Fund fiduciaries would be exposed to civil and criminal penalties.

TIG claims that because of the clearance refusals, threats of charges, trials, and fines, and the threatened retirement benefit deductions, a number of employees have stopped working for TIG in both the area serviced by Local 450 and that serviced by Local 406. It further states that after employees quit, the disruption in TIG's work caused it significant financial loss, all intended by Local 450.

The Amended Complaint asserts causes of action for (1) breach of contract, for which it seeks a declaratory judgment and a speedy hearing; and, alternatively, if Local 450's claimed repudiation of the contract on January 28, 2013 was effective, (2) deliberate tortious interference with prospective business relationships with both Local 406 members and non-406 members.

_____

[4] In its motion for speedy hearing and expedited discovery, TIG identifies and provides supporting documents showing that Local 406 Vice President Carlos Benoit (Ex. 5 to #13, Bryan Fontenot's statement) and Local 450 Business Agent Fred Swift (Ex. 6) made such threats.

With respect to TIG's motion for speedy hearing and expedited discovery, Federal Rule of Civil Procedure 57 provides, "The court may order a speedy hearing of a declaratory judgment action." Thus the Court has discretion to decide whether a speedy hearing is appropriate.

TIG also seeks to take a small number of depositions to begin after May 6, 2013. Although the federal rules usually bar a party from seeking discovery from any source before the Rule 26(f) conference, upon a showing of good cause the court may order expedited discovery. Fed. R. Civ. P. 26(d)(1)("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Although Rule 26 does not so state, to justify a court order for expedited discovery the party seeking discovery should show good cause. 6A Charles Alan Wright, *et al.*, *Federal Rules of Civil Procedure* § 2046.1 (3d ed. database updated Apr. 2013). Generally "decisions whether to grant or deny leave for early discovery depend on the specific justifications offered in support of the application. Often, courts authorize such discovery limited to specific topics advanced to justify the early commencement of discovery." *Id.* "Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the

responding party.'" *St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011), *citing Energy Production Corp. v. Northfield Ins. Co.*, Civ. A. No. 10-0933, 2010 WL 3184232, *3 (E.D. La. Aug. 6, 2010), *citing in turn In re Countrywide Fin. Corp.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008). *See generally Combat Zone Corp. v. John/Jane Does 1-2*, Civ. A. No. 2:12-CV-00509, 2012 WL 6684711, *1 (E.D. Tex. Dec. 21, 2012)("An increasing majority of district courts, including several in the Fifth Circuit, have adopted a 'good cause' standard to determine whether to permit such expedited discovery.")(and cases cited therein). Among factors courts consider in deciding whether to expedite discovery are "(1) whether the plaintiff makes a prima facie showing of harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the necessity of the subpoenaed information to advance the claim; and (5) the user's expectation of privacy." *Id.* Courts have granted expedited discovery when the party seeking it shows irreparable harm that can be avoided by limited, expedited discovery. *St. Louis Group*, 275 F.R.D. at 240.

TIG requests a speedy hearing and expedited discovery because the agreement, about which it seeks a declaratory ruling, expires on June 30, 2012, so it asks for a speedy hearing no later than June 24, 2012 (and seemingly a decision before expiration of the contract on June 30th) on its Amended complaint "to minimize the

danger of avoidable loss as well as the unnecessary accrual of damages and to provide an early adjudication of Local 450's alleged defenses to liability." Contract, Ex. 1, p. 11; #13, p. 3.

As for good cause for expedited discovery, TIG urges,

> In the construction industry generally, and especially for crane operators, people must travel for work. Often, instead of "traveling," people move. . . . Because the Local 406 operators who worked for TIG in South Texas will scatter over time, it is imperative that they be subpoenaed and deposed quickly. . . . Plaintiff's only hope of securing admissible testimony from those operators outside the Court's trial subpoena power under Rule 45(c)(3)(A)(ii) will be to depose them and offer their testimony into evidence pursuant to Fed. R. Evid. 804(a). TIG therefor requests an order permitting it to subpoena and depose those Local 406 operators whom TIG unsuccessfully attempted to employ in South Texas as well as those TIG employees who quit working for TIG in response to Local 450's threats.

#13, p. 6. TIG believes that most of the Local 406 operators reside outside the Court's trial subpoena power. *Id.*, n. 4.

In response, Local 450 objects that TIG filed this suit on February 20, 2012, but did not serve Local 450 until March 12, 2013. Local 450 filed its first motion to dismiss on April 2, and TIG "waited until the penultimate day, April 22, to respond to the motion. That same day, Plaintiff filed an amended complaint adding another cause of action, along with its motion for a speedy hearing and expedited discovery." Local 450 argues that the Court should strike or deny the motion for three reasons: (1) TIG failed to comply with Local Rules 7.1(C)(requiring opposed motions to have a proposed order) and 7.1(D)(certificate of conference indicating the

motion is opposed); (2) TIG seeks an impermissible circumvention of the screening function of a Federal Rule of Civil Procedure 12 motion, which should be addressed before TIG is granted discovery; and (3) TIG has not made an adequate factual showing justifying the taking of depositions commencing only two weeks after it filed its live pleading or a speedy trial with two months after it filed its live pleading.  Local 450 further objects that TIG has not tailored its request for expedited discovery in any way, but instead asks "to conduct free-ranging depositions of all fact witnesses in the case who are not under Plaintiff's control." #15, p.5.

After considering the motion and the applicable law, the Court agrees with TIG that there is some urgency here because of the nature of the construction business and the fact that construction workers generally move around regularly from job to job, often at a long distance from the current work site, a circumstance that constitutes good cause to attempt to obtain expedited discovery before the alleged contract expires on June 30th or before those employees who have already quit or will be finishing their jobs are beyond the Court's subpoena power.  Moreover TIG's failure to comply with the Local Rules does not significantly prejudice Local 450.  TIG filed a proposed order (#17) a day after Local 450 filed its response in opposition.  That proposed order tailors TIG's discovery request by identifying the individuals and their jobs that TIG seeks to depose expeditiously:  In its proposed order it

names the following:   Local 450 Business Agent/Treasurer Fred
Swift; Local 450 Business Manager Mark Maher, Sr.; operators Brian
Carpenter, Petie Circello, Johnny Johnson, Brock Linder and Steve
Martinez; and TIG employees Tony Cusenza, Heather Cusenza and David
Hatfield, who allegedly already quit working for TIG because of
Local 450's threats.   Furthermore, the Court will address the
motions to dismiss after the last becomes ripe, but as it has
indicated already, there are matters raised in the briefing that
are not appropriate for resolution on a Rule 12(b) review and some
for which TIG may require an opportunity to replead.   Moreover,
given the Court's heavy docket, the same matters make a speedy
trial and decision before June 30, 2013 very unlikely.[5]

Accordingly for the reasons stated, the Court

ORDERS that TIG's motion for speedy hearing on its declaratory
judgment is DENIED, but its motion for expedited discovery is
GRANTED (instrument #13).   The parties shall submit within five
days an agreed schedule for oral and videotaped depositions of the
named individuals.   Because the Court finds that a hearing is
unnecessary, the Court

---

[5] The Court observes that there is no jury demand in this
case.

-10-

ORDERS that TIG's request for hearing (#18) is DENIED.

**SIGNED** at Houston, Texas, this __10th__ day of __May__, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE