IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TURNER INDUSTRIES GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-13-0456 |
| | § | |
| INTERNATIONAL UNION OF OPERATING | § | |
| ENGINEERS, LOCAL 450, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

In its original Complaint (instrument #1) in the above referenced cause, grounded in Section 301(a) of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185(a),[1] Plaintiff Turner Industries Group, LLC ("TIG") sought a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, that it has an enforceable labor contract[2] with Defendant International Union of Operating Engineers (IUOE"), Local

_____

[1] Section 185(a) recites,

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in an district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

[2] A copy of the contract (Master Crane Rental Evergreen Project Labor Agreement, dated July 1, 2012) is attached to TIG's Complaint, Ex. A #1 (but actually filed separately in #3) and to TIG's Amended Complaint, Ex. A to #11.

450 ("Local 450") and that Local 450 is in ongoing, material breach of that agreement.  In its Amended Complaint (#11) for declaratory judgment and damages, TIG has added an alternative claim for tortious interference with its prospective business relations under Texas common law, independently based on diversity jurisdiction under 28 U.S.C. § 1332(a).  Pending before the Court *inter alia* are two motions to dismiss:  (1) Defendant Local 450's motion to dismiss the original Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted, or Rule 12(b)(1)(lack of subject matter jurisdiction) and 12(b)(3)(improper venue) because the contract contains a mandatory arbitration provision (instrument #9); and (2) Defendant's [supplemental] motion to dismiss Plaintiff's Amended Complaint[3] under Rule 12(b)(6)(#19).

### Allegations of the Second Amended Complaint

TIG is a Louisiana Limited Liability Company licensed to do business in Texas.  At all relevant times it is involved in industrial construction and maintenance work at job sites in and near Houston, Texas.  TIG asserts that Local 450, a labor organization within the meaning of the LMRA, and TIG are parties to the contract in dispute, which covers wages, hours, and working conditions for certain represented employees working on jobs for TIG.  Up until TIG initiated this suit, under the contract Local

---

[3] The Amended Complaint is instrument #11.

450 was notified by TIG through Local 406 about each TIG job in Local 450's area, and TIG paid working dues and apprenticeship fund contributions, which were accepted, for TIG employees who are traveling members of Local 450's Louisiana sister union, IUOE Local 406.  Since they entered into the contract, TIG has requested that Local 450 refer employees for TIG's jobs, but Local 450 either refused or was unable to refer enough qualified operators in a timely manner to meet TIG's needs, so TIG relied on traveling members of IUOE Local 406 to provide them.

Before January 28, 2013, Local 450 filed a grievance under the contract in which it specifically stated that the contract was enforceable.  Then in a letter dated January 28, 2013 (Ex. 2) Local 450's attorneys claimed that the contract had not been "consummated," but that even if it had been consummated, TIG had breached it by failing to inform Local 450 of jobs in the Houston area and/or by failing to staff those jobs with Local 450 members. The letter then declared the contract was terminated as of that date.

Around February 11, 2013, Local 450 started refusing to "clear traveling members of IUOE Local 406 to work for TIG in the Houston area serviced by Local 450, even though the contract required such clearance.  It also began, through its agents and representatives, to threaten and coerce Local 406 members and non-Local 406 members with charges, trials, and fines to be assessed against them if they

continued to work for TIG.   TIG immediately asked IUOE General President James Callahan to intervene in and resolve the dispute, but he did not respond to the request.

On or before February 18, 2013, agents of Local 450 threatened TIG employees, all member of IUOE Local 406, some of whom were working in Louisiana, that if they continued to work for TIG in the Houston area without Local 450 clearance, the IUOE would impose disciplinary fines of thousands of dollars on each of them and that those fines, unless sooner paid, would be deducted from retirement benefits due to them from the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (the "Fund").   The Fund is an ERISA-regulated, multi-employer retirement plan, and Agents of the International Union of Operating Engineers are ERISA plan fiduciaries.   If the threats were carried out, these responsible Fund fiduciaries would be exposed to civil and criminal penalties.

TIG claims that because of the clearance refusals, threats of charges, trials, and fines and the threatened retirement benefit deductions, a number of employees have stopped working for TIG in both the area serviced by Local 450 and that serviced by Local 406. It further states that after employees quit, the disruption in TIG's work caused it significant financial loss, all intended by Local 450.

The Amended Complaint asserts causes of action for (1) breach

-4-

of contract, for which it seeks a speedy hearing and a declaratory judgment that the contract has been in effect and remains in effect and that Local 450 materially breached it[4];  alternatively, if Local 450's claimed repudiation of the contract on January 28, 2013 was effective, TIG asserts a cause of action for (2) deliberate tortious interference with prospective business relationships with both Local 406 members and non-406 members.

### Standards of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

---

[4] Local 450 claims that it lawfully repudiated the contract on January 28, 2012.  In the Amended Complaint TIG argues that if the contract was legally repudiated, Local 450 lacked any contractual justification for its unlawful threats and tortious interference with TIG's actual and prospective relationships with those Local 406 members on whom TIG relied to provide crane operator services within the Houston area.  TIG contends that the Local 450's threats amount to independently tortious or unlawful acts and that the threats were made with a conscious desire to prevent TIG's relationships with Local 406 from happening.  Local 450 allegedly made threats to non-406 members, too, with a conscious desire to prevent TIG from maintaining or forming prospective business relationships with them.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).   The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.   Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

"Rule 12(b) is not a procedure for resolving contests about the facts or the merits of a case." *Gallentine v. Housing Authority of City of Port Arthur, Tex.*, ___ F. Supp. 2d ___, Civ. A. No. 1:12-CV-417, 2013 WL 244651, *3 (E.D. Tex. Jan. 22, 2012), *citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:  Civil 2d* § 1356, at 294 (1990).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine  the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank*

*PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins,* 224 F.3d at 498-99; *Cinel v. Connick,* 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).   *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.   *Funk v. Stryker Corp.,* 631 F.3d 777, 780 (5th Cir. 2011).   "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201(b).

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction.   The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof for a 12(b)(1) motion.   *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).   In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.   *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter

jurisdiction exists. *Id*. The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[5] has significant authority "'to weigh the

_____

[5] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id*. To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an

evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Circuit courts disagree on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion to seek dismissal based on an arbitration clause. *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005), *citing* 5B Wright & Miller, *Federal Practice and Procedure*, § 1352 (3d ed. 2004).  The Fifth Circuit panel in *Lim* applied Rule 12(b)(3).  *Id.*

Rule 12(b)(3)(a party may assert the defense of improper venue by motion) requires the court to view all well pleaded facts in a light most favorable to the plaintiff, to accept them as true, and to resolve all conflicts in plaintiff's favor.  *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448 (5th Cir. 2008).  The court may look at evidence in the record beyond the alleged facts and proper attachments.  *Id.*

---

evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*, 613 U.S. 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

**Defendant's Motions to Dismiss under Rule 12(b)(#9 & 19)**

In the first motion to dismiss, addressing the original Complaint, Local 450 urges that Plaintiff's suit seeking a "judgment that the parties have a current, enforceable labor contract and that Defendant Local 450 is engaged in an ongoing, material breach of that contract" must be dismissed because (1) the alleged contract does not apply to any past, current or future project; (2) even if it was in effect at some time in the past, Local 450 has validly repudiated it; and (3) even if the Court concludes that the alleged contract is currently in effect, it contains a mandatory arbitration provision.

Defendant contends that the face of the document in dispute (Ex. A to Plaintiff's Complaint) shows the purported agreement is not a binding contract with respect to any work at any job sites. The Title reads, "Master Crane Rental Evergreen Project Labor Agreement Between Turner Industries Group, LLC Equipment Division and the International Unions of Operating Engineers Local 450 for _____." The duration and signature provision, Article XXV, provides, "This Agreement is for project _____" and "shall remain in full force and effect until midnight on the date of project completion. No projects were listed in the document. Moreover the course of dealing (or lack thereof) confirms that the alleged contract is not binding on any projects under the introduction:

-12-

This agreement is binding on the Employer and the Union only on those projects identified to the Union by the Employe[r][6] by email to Local 450 Business Manager.  By execution of this agreement, Turner Industries Group agrees to make such notification on each and every occasion Local 406 members are employed by Turner on projects within the jurisdiction of Local 450, regardless of the duration of such employment.

The Complaint does not allege that any projects were identified by e-mail to Defendant's business manager.  Instead Plaintiff asserts that Local 406, not Local 450, informed Defendant "of each TIG job in Local 450's area" by unidentified means.

Article VI of the alleged contract states, "When the Employer obtains a project outside of normal day-to-day crane rental performance, . . . the Employer agrees to notify the Union of such projects and shall arrange a date, time, and place to hold a pre-job conference prior to the commencement of any work."  Plaintiff fails to plead that it held any such pre-job conferences, a lapse which supports Defendant's contention that the contract was not in effect for any jobs.

Article XXIII provides, "The terms of this Agreement shall not be modified or changed in any way other than by the mutual written consent of the Unions and the Employer."  Thus they cannot be modified by the practices of the parties.  Even if at times the parties acted in a manner consistent with the purported contract,

---

[6] In a footnote Defendant identifies this as a "typo" because "Employer" was meant.  The following sentience defines "Employer," a term used throughout the document, while "Employee" is not defined and is not capitalized elsewhere in the document.

the plain language of the document controls.

Because the purported contract on its face does not apply to any project, there is no "actual controversy" for the Court to resolve with a declaratory judgment. 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."). Local 450 asserts that TIG is seeking an opinion asking what the law would be, based on a hypothetical state of facts--not an actual controversy that can be resolved under the Declaratory Judgment Act.

Defendant further argues that Plaintiff fails to show any likelihood that the parties will enter into an agreement in the future that applies to specified projects; thus "no case or controversy of 'sufficient immediacy and reality'" is before the Court. *Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983)(*quoting Golden Zwickler*, 394 U.S. 103, 109 (1969)). A plaintiff must establish an actual controversy exists at the time the complaint is filed. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Because the alleged contract did not identify a project to which it related, there was no actual controversy at the time of filing and there still is none. Because Plaintiff cannot state a "plausible" claim, its suit must be dismissed under Rule 12(b)(6). *Twombly*, 550 U.S. at 570.

-14-

Should the Court decide that there was a valid, enforceable contract that applied to one or more jobs at some time in the past, this action still fails because the alleged contract was clearly and unequivocally repudiated by Local 450: before this suit was filed, a representative of Local 450 wrote to Plaintiff, "IUOE Local 450 hereby formally abdicates the Agreement and provides this notice of termination effective immediately." Complaint, Ex. B at 1.

As an exception to the general rule in the National Labor Relations Act ("NLRA") that extending recognition to a minority union would constitute an unfair labor practice,[7] an employer primarily engaged in the building and construction industry, such as Plaintiff here, may enter into a pre-hire agreement with a union--like Local 450--that has not established majority status in the appropriate bargaining unit. 29 U.S.C. § 158(f). Because Plaintiff does not allege that Local 450 has majority status, it is undisputed that the alleged contract, to the degree that it was ever a valid agreement, was a pre-hire agreement entered into under 29 U.S.C. § 158(f). A pre-hire agreement under § 158(f), like the alleged contract, "is voidable until such time as the union achieves majority support in the appropriate bargaining unit," i.e., it can be repudiated at any time. *See, e.g., NLRB v.*

---

[7] *See, e.g., Int'l Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731 (1961).

*Haberman Const. Co.*, 641 F.2d 351, 357 (5th Cir. 1981), *citing NLRB v. Local 103, Int'l Assoc. of Bridge Workers (Higdon Construction Co.)*, 434 U.S. 335, 341 (1978).[8]  A party may repudiate a contract under § 158(f) by "manifest[ing] an intention to void or repudiate the contract," as Local 450 did by January 28, 2013, if not before. *Jim McNeff v. Toddy*, 461 U.S. 260, 270 (1983).   Therefore Plaintiff's claim for a declaratory judgment that the contract is in force and that Local 450 is in material breach is not plausible on its face.

Even if the Court disagrees and finds Plaintiff has made a plausible claim that the contract is current and enforceable, Local 450 maintains the suit must still be dismissed under Rule 12(b)(1) or 12(b)(3) because the document contains a mandatory arbitration provision (Article X :  "Any dispute arising under the application or interpretation of the terms and conditions of this Agreement shall be resolved in accordance with the procedures set forth in here."), Ex. A at pp. 3-4 to #1).  Article X sets out a three-step grievance procedure and culminates in "final and binding Arbitration"; it does not provide for judicial review of the arbitration awards or any other right of access to the federal

---

[8] Observing that although the National Labor Relations Board has concluded that such agreements cannot be repudiated during their terms, *John Deklewa & Sons Inc.,* 282 N.L.R.B. 1375 (1987), Defendant points out that the Fifth Circuit has repeatedly refused to follow that holding.  *See, e.g., Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 519 n.1 (5th Cir. 2007).

courts.  *Id.*   Plaintiff can only overcome a presumption of arbitrability if it shows that the arbitration clause cannot possibly be interpreted to cover the dispute by proving that the dispute is expressly excluded from the arbitration obligation or producing "the most forceful evidence" of an intent to exclude the dispute from arbitration.  Plaintiff has not even tried to do so, Local 450 contends.

The contract was negotiated under the NLRA's authority.  #1, Ex. A at p.1.  In three cases known as the *Steelworkers Trilogy*, all reaffirmed in *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986), the Supreme Court established four fundamental principles underlying arbitration issues under collective bargaining agreements.  *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.* 363 U.S. 593 (1960).  First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T*, 475 U.S. at 648; *Warrioer & Gulf*, 362 U.S. at 582.  The second, "which follows inexorably from the first," is the court decides whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance unless the parties "clearly and unmistakably provide otherwise." *AT&T*, 475 U.S. at 649, *citing Warrior & Gulf*, 363 U.S. at 582–83.  Third, "in deciding whether

-17-

the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. . . . [E]ven if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." *Id.* at 649-50, *citing Am. Mfg.*, 363 U.S. at 568. The last principle, establishing a presumption of arbitrability, is, "The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *AT&T*, 475 U.S. at 650. "'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id., quoting Warrior & Gulf*, 363 U.S. at 582-83. The presumption applies especially where the collective bargaining agreement contains a broad arbitration clause, e.g., one providing for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation thereunder." *AT&T*, 475 U.S. at 650. "In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id., quoting Warrior & Gulf*, 353 U.S. at 584-85. The

-18-

Fifth Circuit regularly applies this four-principle framework in determining arbitrability under labor agreements. *See, e.g., Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.*, 449 F.3d 616, 619-20 & n.2 (5th Cir. 2006). Here, the broad arbitration clause contains no express exclusions and states, "Any dispute arising under the application or interpretation of the terms and conditions of this Agreement shall be resolved in accordance with" Article X, which in turn provides that any dispute not settled in the first two steps of the grievance process can be submitted to arbitration by either Plaintiff or Defendant. #1, Ex. A at pp. 3-4. Because it lacks "any express provision excluding a particular grievance from arbitration, only 'the most forceful evidence of a purpose to exclude the claims from arbitration can prevail." *AT&T*, 475 U.S. at 650. A review of the original complaint reveals that all of Plaintiff's claims are covered by the arbitration provision in the document which Plaintiff seeks to have the Court declare is a valid contract that has not been repudiated by Local 450.

Local 450's second motion to dismiss (#19), reaffirms its first motion and then moves to dismiss the Amended Complaint's claim of tortious interference with prospective business relations under Texas common law pursuant to Rule 12(b)(6) on the grounds that it is preempted by the NLRA and the LMRA.

State law may not encroach upon the system of federal laws

governing labor relations; local laws attempting to occupy the same or similar ground as the national scheme are preempted. *See Local 20, Teamsters Union v. Morton*, 377 U.S. 252, 259-60 (1964)(holding that although the NLRA[9] neither prohibits nor protects secondary boycotts, which function as a form of self-help available to unions to aid them in reaching their bargaining goals during negotiations, state-law attempts to regulate them are preempted because use of the boycott was part of the balance struck by Congress between the conflicting interests of the union, the employees, the employer, and the community; exceptions are when the type of conduct constitutes an imminent threat to public order or implicates deeply rooted local concerns)[10]; *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244 (1959)("When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8,

---

[9] The NLRA does not contain an express preemption clause, but the Supreme Court has continued to reiterate that the National Labor Relations Board ("NLRB") power to implement the NLRA is exclusive in order to ensure that the statute is applied uniformly nationwide. *Bethlehem Steel Co. v. New York State Labor Relations Bd.*, 330 U.S. 767, 775-77 (1947); *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244 (1959)("[T]o allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy.").

[10] The Supreme Court further held that if it is unclear whether the activity is governed by sections 7 or 8, "these determinations [must] be left in the first instance to the National Labor Relations Board." 359 U.S. at 244-45.

due regard for federal enactment requires that state jurisdiction must yield. . . . [T]o allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.").[11]

_____

[11] What has become known as "*Garmon* preemption" under the NLRA (state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the NLRA) is discussed in *Offices at 2525 McKinnon, LLC v. Ornelas*, 681 F. Supp. 2d 778, 783-84 (N.D. Tex. 2010), as follows:

   The Supreme Court in *Garmon* recognized that Congress intended to vest the . . . NLRB with authority to administer, interpret and apply the NLRA and federal labor policy. *Garmon*, 359 U.S. at 242-43 . . . . Thus "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. *Id.* at 244; *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 . . . . (1983). When challenged conduct is "arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. . . . A claim of *Garmon* preemption is therefore a claim that a plaintiff's causes of action belong within the jurisdiction of the NLRB, rather than the courts. *Intn'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 393 . . . (1986); *Garmon*, 359 U.S. at 244-45 . . . .
   In *Garmon* and its progeny, the Supreme Court recognized exceptions to NLRA preemption whereby the state court may retain jurisdiction over claims if "the behavior to be regulated is behavior that is of only peripheral concern to the federal law . . . or touches interests deeply rooted in local feeling and responsibility." *Belknap, Inc.*, 463 U.S. at 498 . . . .

   "The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application, but whether the controversy presented to the

-21-

Claims of tortious interference based on conduct regulated by the LMRA are subject to the preemption doctrine.[12] *BE&K Constr. Co.*

---

state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice of jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." *Sears, Roebuck and Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978). *In accord* with the "identical inquiry" or "critical inquiry" requirement in *Sears* and *Belknap*, 463 U.S. at 510, *Windfield v. Groen Div., Dover Corp*, 890 F.2d 764, 769-70 (5th Cir. 1989); *DuPont de NeMours & Co. v. Sawyer*, 517 F.3d 785, 793-95 (5th Cir. 2008)("That inquiry requires not only looking to the factual bases of each controversy, but also examining the interests protected by each claim and the relief requested."); *Galveston Linehandlers, Inc. v. Int'l Longshoremen's Assoc. Local No. 20*, 140 F. Supp. 2d 741, 744, 747 (S.D. Tex. 2001).

Section 8(b)(1)(A) of the NLRA makes it unlawful for a labor organization or its agents from "restrain[ing] or coerc[ing] employees in the exercise of rights guaranteed in Section 7." Section 7, 29 U.S.C. § 157, provides,

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment authorized in section 158(a)(3) of this title.

[12] Section 301 of the LMRA preempts state causes of action that allege the violation of a collective bargaining agreement affecting interstate commerce and requires these disputes to be brought in federal court, but only if the state-law claim "requires the interpretation of a collective bargaining agreement." *Amalgamated Local 716 of the Intern. Union, Sec., Police and Fire Professionals of America v. International Union, Sec., Police and Fire Professionals of America*, 873 F. Supp. 2d 796, 798 (S.D. Miss. 2012), *citing Branson v. Greyhound Lines, Inc. Amalgamated Council Ret. & Disability Plan*, 126 F.3d 747, 753 (5th Cir. 1997); *Lingle*

*v. United Bhd. of Carpenters*, 90 F.3d 1318, 1330 (8th Cir. 1996)(preempting state law tortious interference with contractual relations when based on conduct that is regulated by the LMRA);

---

*v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *Trevino v. Ramos*, 197 F.3d 777, 779 (5th Cir. 1999)("The intent of LMRA's pre-emptive reach is to fashion a uniform body of law regarding collective bargaining agreements and other labor contracts."), *cert. denied*, 531 U.S. 1036 (2000).  Title 29 U.S.C. § 185(a) provides,

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7 (2003).  "[S]ection 301 also preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms." *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994), *citing Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985).  The Sixth Circuit has developed a two-step inquiry to determine if a state-law claim is preempted by § 301: (1) does the state-law claim require interpretation of the terms of the collective bargaining agreement, i.e. is it "inextricably intertwined" with the interpretation of the CBA terms or only "tangentially related"; and (2) are the rights claimed by the plaintiff created by the collective bargaining agreement or by state law.  *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004); *Paul v. Kaiser Foundation Health Plan of Ohio*, 701 F.3d 514, 519, 522 (6th Cir. 2012).  If the state-law claim requires interpretation of the collective bargaining agreement or if it is created by the collective bargaining agreement, it is preempted.  *Id.*
     The Supreme Court, in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985), ruled that section 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."

*Ehredt Underground, Inc. v. Commonwealth Edison Co.*, 90 F.3d 238, 240-41 (7th Cir. 1996)(claims of interference with contracts are preempted because the challenged "activities are in the domain of federal labor law and state regulation is forbidden whether federal arguably protects or prohibits the conduct."), *citing Garmon*, 359 U.S. 236; *Allied Int'l, Inc. v. International Longshoremen's Ass'n*, 640 F.2d 1368, 1381 (1st Cir. 1981)(preempting federal common law claim of tortious interference with existing and prospectively advantageous business relationships), *aff'd*, 456 U.S. 212 (1982).

Local 450 observes that factual allegations of "unlawful threats" by TIG could constitute unfair labor practices under 29 U.S.C. § 158(b)(1)(A). *See Glass & Pottery Workers Locals 185 & 128*, 273 N.L.R.B. 198, *1 (1984)(holding that threats of adverse consequences against a Union member for returning to work for a company the Union was in a dispute with, "if implemented would adversely affect [the member]'s employment relationship, violating 29 U.S.C. § 158(b)(1)(A)"); *Millwright & Machinery Erectors v. NLRB*, 798 F.2d 781, 783-84 (5th Cir. 1986)(union "may not apply arbitrary or invidious criteria in referring employees to jobs" without violating 29 U.S.C. § 158(b)(1)(A)("It shall be an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of their rights guaranteed in section 157 of this title")).

Local 450 contends that TIG's tortious interference claim is

preempted by the federal labor laws under *Garmon* and asks the Court to dismiss these claims under Rule 12(b)(6).  *See Bass v. Stryker Corp.*, 669 F.3d 501 (5th Cir. 2012)(affirming dismissal of preempted causes of action under Rule 12(b)(6)).

In sum, Local 450 urges the Court to dismiss TIG's claims in their entirety with prejudice, and to award it fees and costs, for which it will file a separate motion within fourteen days after entry of judgment.

### Plaintiff's Responses (#12 and 22)

In #12 Plaintiff addresses the two grounds of Local 450's argument in the first motion to dismiss: (1) that the July 1, 2012 Agreement is not binding because it fails to specify any projects by name within the text of the Agreement, and even if it were binding, TIG violated the pre-job notice procedures set out in the Agreement, precluding TIG's rights under it; and (2) assuming the Agreement was binding, Local 450 had a legal right to repudiate it at any time before the June 30, 2013 expiration because the Agreement was a "pre-hire" Agreement within the meaning of 29 U.S.C. § 158(f).

Insisting that the parties had an enforceable agreement despite the absence of specified project names on pages 1 and 11 of the Agreement, TIG points out that all Circuit Courts of Appeals have ruled that "the construction and application of a collective bargaining agreement's terms cannot be strictly confined by

ordinary principles of contract law" and that "the provisions of a labor contract may be more readily expanded by implication tha[n] those of contracts memorializing other transactions." *United Paperworkers Intern. Union AFL-CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1256 (5th Cir. 1990); *Ominski v. Northrop Grumman Shipbuilding, Inc.*, 466 Fed. Appx. 341, 346 (5th Cir. Apr. 10, 2012)(*citing United Paperworkers*)(although federal law governs the construction of collective bargaining agreements, traditional contract principles apply when they are not inconsistent with federal labor law). *See also NLRB v. Haberman Const. Co.*, 908 F.2d 351, 355-56 (5th Cir. 1981)(*en banc*)("It is well settled that a union and employee's adoption of a labor contract[13] is not dependent on the reduction to writing of their intention to be found. Instead what is required is conduct manifesting an intention to abide by the terms of an agreement. [citations omitted]")(finding enforceable labor agreement based on employer's payment of union wages, contribution to union trust funds, observance of union holidays, and allowance of steward's control over certain work practices); *Eastern Air Lines, Inc. v. Air Pilots Ass'n*, 861 F.2d 1546, 1550 (11th Cir. 1988)(contract law formation requirements are to be given "liberal interpretation" because of "important federal

---

[13] The Fifth Circuit made clear that by "labor contract" it was "referr[ing] to both a collective bargaining agreement and a section 8(f) prehire contract." 908 F.2d at 355 n.1.

-26-

policy favoring existence of collective bargaining agreements")[14];

*Line Const. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591

F.3d 576, 580 (7th Cir. 2010)(enforceable labor agreement existed

---

[14] In *Eastern Air Lines*, the Eleventh Circuit, citing *Nat'l Labor Relations Bd. v. Haberman Constr. Co.*, 641 F.2d 351, 356 (5th Cir. 1981)(*en banc*)(holding that labor contracts can be adopted by conduct manifesting an intention to abide by the terms of the agreement), pointed out such factors listed by the district court and other courts:

> (1) the parties' past bargaining history; (2) whether the alleged agreement was reduced to writing; (3) whether the alleged agreement was ratified by the union and signed by the employer; (4) whether the parties implemented the alleged agreement and subsequently operated under its terms; and (5) whether the parties expressed an intent to adopt a contract and to conclude collective bargaining negotiations once the alleged agreement was adopted.

*Eastern Air Lines,* 861 F.2d at 1550.  TIG identifies *Eastern Air Lines* as "the most thorough and instructive" decision based on its objective factor test and observes that the last four factors are present in the instant case.  #12 at p.3.  Moreover, the Eleventh Circuit rejected the argument put forth by Local 450 here, 861 F.2d at 1551 (and cases cited therein) in light of TIG's allegations that it "remitted working dues and apprenticeship funds contributions" for Local 406 members who travel to Local 450's jurisdiction for work as required by the agreement, that Local 450 filed a grievance (#12-1, Ex. 1) in late 2012, and that Local 450 Business Agent Fred Swift's claim that the Agreement "was signed on July 1, 2012 and enforceable as of that date":

> [T]he fact that two parties did not agree on all substantive terms at the time of contracting does not void the contract as a matter of course--parties can agree to dispense with agreement over the precise content of a particular substantive term.  That term of the contract is then no longer the "material" term; rather, the provision that is "material" is the actual agreement to postpone resolution of the substantive term.  Thus, the agreement to dispense with "mutual assent" over a given term is itself a product of "mutual assent."

*Eastern Airlines*, 861 F.2d at 1551.

because facts showed that employer paid union wages, union dues, and union fringe benefits, and that "a contrary rule would ignore commercial reality and would create a loophole for parties seeking to escape responsibilities that they have acknowledged through their

their behavior"); *Bobbie Brooks, Inc. v. Int'l Ladies Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987)(parties to labor agreement "can form a binding agreement which they intend to be final, despite leaving certain terms open for future negotiation"); *Warehousemen's Union Local No. 206 v. Continental Can Co.*, 821 F.2d 1348, 1350-51 (9th Cir. 1987)(intent to create enforceable labor contract will be found based on parties' conduct even if parties thereafter dispute the meaning of ambiguous provisions).

TIG also claims that Local 450 is estopped from denying the existence of the July 2012 Agreement because of TIG's detrimental reliance on the union's representation that the Agreement was binding and "chang[ing] its position to its detriment, with a corresponding benefit to the Union.". *Gulf States Mfrs., Inc. v. N.L.R.B.*, 579 F.2d 1298, 1306 (5th Cir. 1978). TIG remitted working dues and made apprenticeship contributions, which it would not have had to do in the absence of an enforceable labor contract. Thus Local 450 cannot now deny the existence of the July 2012 Agreement.

Next TIG observes that Local 450's claim that its repudiation of the agreement was lawful is based only on the fact that the

Fifth Circuit has not yet addressed the effect of the NLRB's decision in *John Deklewa & Sons*, 282 N.L.R.B. 1375 (holding that the § 8(f) prehire agreements cannot be repudiated by either party before expiration). TIG highlights the fact that its complaint did not designate the agreement as § 8(f) prehire agreement nor a § 9(a) agreement and therefore the Court does not now have to address the question of whether Local 450's repudiation was lawful. The complaint simply invoked TIG's right to sue for breach of a labor contract under 29 U.S.C. § 185(a).

Nevertheless, TIG presents an argument that if the Fifth Circuit were to address the issue, it would agree with eight of the ten of Circuit Courts of Appeals that have ruled on the question, deferred to the Board, and adopted the *Deklewa* holding. *See* discussion in #12 at pp.7-11.

Regarding Local 450's contention that it is entitled to compel arbitration of TIG's complaint, TIG points to the inconsistency of Local 450's January 28, 2013 letter (#1, Ex. B), denying the existence of enforceable agreement and yet simultaneously repudiating the agreement. Local 450 has argued for dismissal on the grounds that the July 2012 Agreement is "not binding." Under that scenario, due to futility, TIG has no duty to comply with the arbitration clause. If Local 450 repudiated the agreement, TIG did not have to follow the grievance procedure under it. *United Slate, Tile and Composition roofers Assoc. v. G&M Roofing and Sheet Metal*

*Co.*, 732 F.2d 495, 501 (6th Cir. 1984)(when party to labor agreement denies its binding nature, other party has no duty to pursue agreement's arbitration process because doing so is futile under applicable law); *Conkright v. Local Union No. 340*, No. G87-842-CA1, 1989 WL 200975, at *5 (W.D. Mich. June 16, 1989)(if facts showed that union's actions amounted to repudiation of agreement, plaintiff is excused from filing grievance based on futility); *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)(employer's repudiation of labor contract relieves employee of duty to pursue grievance procedure under it).  Moreover, where a party to the labor agreement repudiates it, that party cannot subsequently seek to compel arbitration under that same agreement.  *Steam Press Holdings, Inc. v. Hawaii Teamsters & Allied Workers Union*, 302 F.3d 998, 1010-11 (9th Cir. 2002)(employer's pre-strike repudiation of agreement in order to gain leverage over the union resulted in estoppel of the employer's right to later rely on the agreement's arbitration provision during litigation); *Reid Burton Const. Inc. v. Carpenters Dist. Council of Southern Colo.*, 535 F.2d 598, 604 (10th Cir. 1976)(finding local union could be estopped from simultaneously asserting a right to compel arbitration of employer's breach of contract claim where local union's answer denied it was a party to the agreement on which the employer's claim rested).

Finally, TIG insists that Local 450 has not met its burden of showing that TIG's separate state-law tortious interference claim

must be dismissed based on *Garmon* preemption.  TIG states that it limited its claim to Local 450's post-repudiation misconduct because if the repudiation was effective as of January 28, 2013, Local 450 has no lawful justification for its subsequent intentional tortious interference with TIG's relationships with non-450 crane operators.

Local 450 has contended that the unlawful threats alleged in support of TIG's tortious interference claim "could possibly constitute unfair labor practices under 29 U.S.C. § 158(b)(1)(A)" and that such a possible 8(b)(1)(A) violation triggers *Garmon* preemption.  Objecting, TIG notes that as the party claiming *Garmon* preemption, Local 450 "bears the burden of proving that the challenged conduct is arguably prohibited" by the NLRA.  *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 793 (5th Cir. 2008), *citing Garmon*, 359 U.S. 236.  TIG maintains that Local 450 fails to explain what facts in its Amended Complaint establish the existence of a § 8(b)(1)(A) violation, 29 U.S.C. § 158(b)(1)(A) of the NLRA, by showing that Local 450's threats were motivated by an intent to retaliate against threatened operators for having exercised "rights guaranteed in Section 157[15] of this title."  Section 8(b)(1)(A) only prohibits a union from retaliating against an employee for having engaged in concerted activities or for refraining from engaging in concerted activities, protected by

---

[15] See footnote 11.

Section 7 of the NLRA, 29 U.S.C. § 157. *Internat'l Union of Operating Engineers, Local 513, AFL-CIO v. N.L.R.B.*, 635 F.3d 1233, 1234-36 (D.C. Cir. 2011); *Pacific Maritime Assoc.*, 358 NLRB No. 133 (2012)(A section 8(b)(1)(A) violation only exists when there is evidence that union's reprisal of its member occurred due to member having engaged in concerted protected activity within meaning of Section 7); *Carpenters Union Local 25 v. NLRB*. 769 F.2d 574, 580 (9th Cir. 1985)("Because section 8(b)(1)(A) protects the exercise of Section 7 rights, a union violates Section 8(b)(1)(A) if it coerces a member into joining the union or threatens harm for failure to join."). There are no allegations in the Amended Complaint that suggest the threatened operators had engaged in concerted protected activity or had refrained from engaging in such activities before Local 450 allegedly threatened them. #11, ¶¶ 12-17. Therefore, because there is no allegation that the operators exercised rights guaranteed under section 157, there is no legal basis to claim a violation of 29 U.S.C. § 158(b)(1)(a). *IUOE Local 513*, 635 F.3d at 1234-36; *Pacific Marine*, 358 NLRB No. 133. Thus Local 450 cannot meets its burden to show "that the challenged conduct is arguably prohibited" by the NLRA, as is required for a *Garmon* preemption. *DuPont*, 517 F.3d at 793.

Next, even if Local 450 had met its burden to show that Local 450 violated the non-450 crane operators' rights under section 8(b)(1)(A), Local 450 does not show how TIG has legal standing on

which to assert such a violation on behalf of the affected operators. *See Int'l Union of United Auto Workers v. Dana Corp.*, 278 F.3d 548, 559 (6th Cir. 2002)(employer has no legal standing to assert Section 7 rights belonging to its employees); *Healthcare Assoc. of New York v. Pataki*, 471 F.3d 87, 97 (2d Cir. 2006)(employers had no standing to assert rights arising under Section 7 because such rights belonged to employees alone); *Branson v. Greyhound Lines, Inc.*, 126 F.3d 747, 751 (5th Cir. 1997)(Section 7 only protects the rights of employees to organize, strike, and collectively bargain). TIG further notes that the Supreme Court has recognized an exception to *Garmon* preemption where the party asserting a state-law claim has no legal standing to assert a separate NLRA violation against that union for the NLRB. *Sears, Roebuck & Co.*, 436 U.S. at 201-03 (because employer Sears had no legal ability to assert "federally protected" nature of union's conduct to NLRB and only the union could bring it before the Board by filing an unfair labor practice charge that Sears interfered with the union's § 7 right to picket peacefully but refused to do so, Sears lacked an "acceptable means" of doing so, so its state-law trespass claim was not preempted by *Garmon*). "The primary-jurisdictional rationale justifies pre-emption only in situations in which an aggrieved party has a reasonable opportunity to invoke the Board's jurisdiction himself or else to induce his adversary to do so." *Id.* at 201. *See also John S. Griffith Construction Co. v.*

*United Bhd. of Carpenters & Joiners of S. Cal.*, 785 F.2d 706, 711 (9th Cir. 1986)("[A] district court may take jurisdiction if a party has no standing to bring his case before the Board. . . . . Under those circumstances we have . . . found the primary jurisdiction doctrine inapplicable."). Comparing itself to the employers in *Sears* and *Griffin Construction*, TIG, lacking standing to assert claims on behalf of the non-450 crane operators, maintains it has no ability to obtain the Board's ruling on Local 450's violation of the threatened operators' Section 7 rights, so *Sears* precludes Local 450's right to assert *Garmon* preemption and thus it cannot rely on *Garmon* preemption.

TIG further argues that its tortious interference claim[16] is

---

[16] To prevail on a claim for tortious interference with prospective business under Texas law, a plaintiff must show that (1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant committed such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *Faucett v. Chantos*, 322 S.W. 3d 901, 914 (Tex. App.--Houston [14th Dist.] 2010, no writ), *citing Baty v. ProTech Ins. Agency*, 63 S.W. 3d 841, 860 (Tex. App.--Houston [14th Dist.] 2001. pet. denied).
In *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W. 3d 711, 726 (Tex. 2001), the Texas Supreme Court clarified the nature of the tort of tortious interference with prospective business relations under Texas common law:

[T]o recover for tortious interference with a prospective business relation, a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. By independently tortious we do not mean that

not identical to the section 8(b)(1)(A) dispute that the non-450 operators could bring to the NLRB, which would require allegations that the operators engaged in protected concerted activity and Local 450 directed the threats at them in retaliation, none of which is relevant to the tortious interference claim. For TIG's tortious interference claim, Local 450's motivation for its tortious conduct is irrelevant. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W. 3d 711, 724 (Tex. 2001); *Texas Beef Cattle Co. v. Green*, 52 S.W. 3d 711, 724 (Tex. 2001). The elements of a tortious interference claim are different than those for a section 8(b)(1)(A) violation Moreover the focus of a NLRB proceeding would be on Local 450's conduct toward the non-450 crane operations, while the focus of TIG's tortious interference claim is Local 450's

---

the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort. Thus, for example, a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third person without proving that the third person was actually defrauded. . . . Likewise, a plaintiff may recover for tortious interference from a defendant who threatens a person with physical harm if he does business with the plaintiff. The plaintiff need prove only that the defendant's conduct toward the prospective customer would constitute assault. Also, a plaintiff could recover for tortious interference by showing an illegal boycott, although a plaintiff could not recover against a defendant whose persuasion of others not to deal with the plaintiff was lawful. Conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations . . . .

conduct toward TIG.

### Court's Decision

After carefully reviewing the record and the applicable law, the Court finds that TIG has shown plausible reasons to defeat Local Union's motions to dismiss on all claims and that TIG has stated plausible claims.  Accordingly, the Court

ORDERS that Local Union 450's motions to dismiss (#9 and 19) are DENIED.

**SIGNED** at Houston, Texas, this  27th  day of  March , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE